#30429-a-SRJ
**2024 S.D. 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

TROY A. O'BRIEN,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN PEKAS
Judge

* * * *

JOHN R. HINRICHS of
Heidepriem, Purtell, Siegel,
Hinrichs & Tysdal, LLP
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.


MARTY J. JACKLEY
Attorney General

SARAH L. THORNE
Deputy Attorney General

JENNIFER M. JORGENSON
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.

* * * *

ARGUED
JUNE 6, 2024
OPINION FILED **09/04/24**

#30429

JENSEN, Chief Justice

[¶1.]    R.M., a minor, reported to her mother that Troy O'Brien, her mother's boyfriend, had inappropriately touched her breasts and "woman's parts" on multiple occasions. O'Brien was later charged with multiple counts of rape, sexual contact with a child under the age of sixteen, and sexual exploitation of a minor. A jury found O'Brien guilty of all the charges. O'Brien appeals, arguing that there was insufficient evidence to support a finding that he sexually penetrated R.M. as defined by SDCL 22-22-2. He also claims the two charges for rape were duplicitous and the circuit court plainly erred by failing to instruct the jury that they must unanimously agree on each act committed by O'Brien to find him guilty of rape. We affirm.

## Factual and Procedural Background

[¶2.]    In 2010, L.M. and her daughter R.M.[1] moved to Sioux Falls. After L.M. and O'Brien began dating, O'Brien moved in with L.M. and R.M. During O'Brien's and L.M.'s ten-year relationship, they lived in "four, maybe five" homes in the Sioux Falls area.

[¶3.]    Due to L.M.'s work schedule, R.M. was often left alone at home with O'Brien. In October 2021, R.M. informed L.M. for the first time that O'Brien had "inappropriately touch[ed] her" on several occasions when L.M. was either sleeping or away at work. L.M. immediately left the home with R.M. and they temporarily

---

1.    At the time of trial, R.M. was sixteen years of age. The State alleged that O'Brien raped and engaged in sexual contact with R.M. on multiple occasions from August 24, 2019, through October 29, 2021, when R.M. was between the ages of thirteen and fifteen.

-1-

lived with R.M.'s former daycare provider. Child Protection Services (CPS) was also informed of R.M.'s allegations.

[¶4.]        CPS arranged a forensic interview and a physical examination of R.M. at Child's Voice, a children's advocacy center. R.M. met with a nurse practitioner who performed the physical examination of R.M. Her physical examination "from head to toe was normal." R.M. was tested for pregnancy and various sexually transmitted diseases, which all yielded negative results. However, the nurse practitioner indicated in her report that R.M.'s "disclosures were consistent with sexual abuse."

[¶5.]        During the forensic interview, R.M. recalled several instances of sexual abuse that occurred in specific rooms of different homes that she had lived in with her mother and O'Brien. The interviewer noted that R.M. described the last time she was inappropriately touched "in great detail." Although R.M. did not provide the same level of detail for the other instances of inappropriate touching, the interviewer observed that R.M.'s responses were consistent, with each occurrence following "the same or similar routine as others."

[¶6.]        Based upon this information, O'Brien was indicted for one count of rape in the second degree in violation of SDCL 22-22-1(2); one count of rape in the fourth degree in violation of SDCL 22-22-1(5); four counts of sexual contact with a child under the age of sixteen in violation of SDCL 22-22-7; and three alternative counts of sexual exploitation of a minor in violation of SDCL 22-22-24.3. The State also filed a part II information, alleging that O'Brien had been convicted of one prior felony for child abuse in 2003.

[¶7.]    R.M. testified at trial and discussed multiple occurrences when she claimed O'Brien inappropriately touched her.  At the outset of her testimony, R.M. stated that "what [O'Brien] did was molest me or also known as rape[,]" which she described as "touching inappropriate parts where you shouldn't be touched."  R.M. testified that similar acts occurred at "every house" she lived in with O'Brien, but the most recent event occurred at their John Street house.

[¶8.]    With respect to the John Street house, R.M. testified that O'Brien touched her at different times in the "living room and the bedrooms, [and] down in the basement family room."  The first event she testified to occurred in the bedroom L.M. and O'Brien shared.  R.M. testified that "I kind of laid down because I got tired and he just, kind of, came in the room and laid down."  She then stated that once O'Brien laid in the bed "[h]e touched [her] inappropriately."  When discussing what being "touched inappropriately" meant, R.M. testified to the following:

> Q: Okay.  And so you say he touched inappropriately.  [R.M.], can you explain for the jury what that means?
>
> A: Um, touching the chest and the woman's part.
>
> Q: The woman's part.  Okay.  So that's two separate areas; right?
>
> A: Yes.
>
> . . .
>
> Q: Okay.  So when you say that he touched your chest, what did he touch your chest with?
>
> A: His hand.
>
> . . .
>
> Q: Okay.  So what do people generally call that body part?

A: The breast.

. . .

Q: Did his hands go anywhere else, [R.M.]?

A: To the woman's part.

Q: Okay. When you say "the woman's part", what does that mean?

A: Um, where we go to the restroom.

Q: Okay. Is it where you go pee or is it where you go poo?

A: Where you go pee.

[¶9.]     R.M. also testified that she was sometimes completely naked when O'Brien would touch her. Other times she testified that O'Brien touched her with his hand and fingers under her clothing. R.M. responded to questions regarding the touching in the following manner:

Q: Okay. And what was [O'Brien's hand] doing under your clothing?

A: It was moving.

Q: Okay. Did it stay on just your leg or did it go to the other spot? How did that work? Can you explain that to the jury?

A: It went to the other spot, kind of, sliding.

Q: Okay. What was he touching with?

A: His hand.

Q: Okay. How do you know it was his hand, though?

A: Because I could feel his fingers and, like, hand structure.

Q: Okay. You can feel that where?

A: On the woman's part.

[¶10.] R.M. testified that O'Brien's hand sliding under her clothes felt "[r]eally uncomfortable[,]" and that "where he was touching" felt "uncomfortable". R.M. was then asked:

> Q: Okay. So we talked about that sliding motion. Okay. Where did it go after, like, how did it move once it slid under there?
>
> A: I don't quite remember.
>
> Q: Okay. Did it stay still? Did it keep moving? Or do something else?
>
> A: Um, I don't remember.
>
> Q: Okay. You know sometimes we talk about when people tell me things like I don't remember, okay, and sometimes it's because they don't remember and sometimes they really don't remember, but sometimes it's because something[s] are hard to talk about. So is this one of those instances where you don't remember or is it hard to talk about or something else?
>
> A: It's I don't remember.

[¶11.] R.M. further testified that similar events occurred in her bedroom, the living room, and the family room in the basement of the John Street house. She also testified that similar events occurred in all three of the other houses that she lived in with O'Brien. She was then asked:

> Q: Okay. Was every single time exactly the same with little differences? Do you remember?
>
> A: It was exactly the same.
>
> Q: What does that mean?
>
> A: Um, I don't know.
>
> Q: Like, the order, was it the same and how he touched you?

A: Yes.

[¶12.]     R.M. also testified that during various instances she saw O'Brien's penis, which she described as the "man part" that he uses to pee. She testified that she saw his penis "[w]hen he was touching [her] inappropriately[,]" and that he would "take off his clothes" while touching her. When asked whether any part of her body came into contact with O'Brien's penis, she responded by stating "I think so . . . I think my hand. I don't quite know, though."

[¶13.]     During her direct examination, R.M. was also asked to draw a demonstrative image with an arrow pointing to the spot where O'Brien touched her and a picture of "what [her] lady parts look like." The image that R.M. drew is depicted below:



[¶14.]     R.M.'s testimony regarding this image was as follows:

> Q: So I can see the drawing. Okay. And you can see the drawing. Okay. Now what is this part of your drawing?
>
> A: The human body.

Q: The human body.  Whose body is that?

A: Just a human body.

Q: Okay.  Does this kind of look like your human body?

A: Not really.

Q: No, not really.  Okay.  So we're going to not talk about that part.  Actually I do have a question.  What is that?

A: That's the arrow.

Q: What does that point at?

A: The woman's part.

. . .

Q: Okay.  Now I want to talk about this part up here in the corner.  Okay.  Your lady parts.  Right before we had to pause for a minute, I was asking you what this oblong, not quite oval, but oblong; is that fair?  What is that part right there?

A: I don't know.

Q: Okay.  You don't know.  Is it what your lady parts look like?

A: Yeah.

Q: What is that part used for?

A: I don't know.  To use --[interruption]

Q: To use what?

A: To use the restroom.

R.M. was then asked to draw a star where she was touched by O'Brien.  In response, R.M. drew a star in the center of the image that she described as her "lady parts".

[¶15.] At the conclusion of the State's case-in-chief, O'Brien moved for a judgment of acquittal arguing that the State failed to elicit sufficient evidence regarding the element of penetration to sustain the rape charges. The circuit court denied O'Brien's motion and sent the case to the jury. The jury returned a guilty verdict on all nine counts contained in the indictment. In addition to the jury verdict, O'Brien subsequently admitted to the part II information filed by the State.

[¶16.] The circuit court sentenced O'Brien to fifty years imprisonment for the second-degree rape conviction. The court further imposed twenty-five-year sentences on the fourth-degree rape conviction and each of the four convictions for sexual contact with a child under the age of sixteen. The court also imposed a five-year sentence for one count of sexual exploitation of a minor but did not impose any sentence on the two alternative convictions for sexual exploitation of a minor. O'Brien's sentences were ordered to run concurrently.

[¶17.] O'Brien appeals and raises two issues which we restate as follows:

1. Whether there was sufficient evidence to establish the element of sexual penetration for the two rape convictions as required by SDCL 22-22-1(2) and 1(5).

2. Whether the circuit court committed plain error by failing to give a unanimity instruction with respect to the two rape convictions.

**Analysis and Decision**

*1.     Sufficiency of the evidence*

[¶18.]          "Sufficiency of the evidence challenges raise questions of law reviewed de novo." *State v. Boe*, 2014 S.D. 29, ¶ 27, 847 N.W.2d 315, 322 (citing *State v. Wheeler*, 2013 S.D. 59, ¶ 7, 835 N.W.2d 871, 873).  "In measuring the sufficiency of the evidence, we ask 'whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83).  "No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt." *Id.* (quoting *State v. Shaw*, 2005 S.D. 105, ¶ 44, 705 N.W.2d 620, 632).  Accordingly, "[w]e do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence on appeal." *State v. Wolf*, 2020 S.D. 15, ¶ 13, 941 N.W.2d 216, 220 (quoting *State v. Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d 329, 342).

[¶19.]          O'Brien only challenges the two rape convictions and limits his argument to whether there was sufficient evidence for a rational jury to conclude that sexual penetration occurred as defined by SDCL 22-22-2.  O'Brien argues that "R.M. never testified directly that [he] engaged in an act of sexual penetration with her."  He further argues that despite the State's efforts to elicit testimony regarding penetration, R.M. was only able to testify that she did not remember the extent of the touching.  Additionally, he points out that R.M. never testified to experiencing pain, did not contract any sexually transmitted diseases, nor was O'Brien found to

be in possession of child pornography, all of which can be used to infer that penetration occurred. *See State v. Toohey*, 2012 S.D. 51, ¶¶ 26–27, 816 N.W.2d 120, 129–30; *State v. Carter*, 2023 S.D. 67, ¶¶ 40–42, 1 N.W.3d 674, 689–90.[2]

[¶20.]     The State responds that there was sufficient circumstantial evidence to support the verdict. The State highlights R.M.'s testimony that "[O'Brien] would use his finger to touch her 'woman's part,' the 'part where you go pee.'" The State also argues that the demonstrative drawing by R.M. clearly depicted where she was touched and that "[a] commonsense conclusion and reasonable inference based on R.M.'s testimony and drawings is that [O'Brien] used his finger to penetrate R.M.[.]"

[¶21.]     "Sexual penetration is defined as 'any intrusion, however slight, of any part of the body or of any object into the genital or anal openings of another person's body.'" *Toohey*, 2012 S.D. 51, ¶ 22, 816 N.W.2d at 129 (quoting SDCL 22-22-2). "We have interpreted this definition to mean that evidence of vulvar or labial penetration, however slight, is sufficient to prove penetration of the female genital opening." *Id.* (citing *State v. Packed*, 2007 S.D. 75, ¶ 32, 736 N.W.2d 851, 861). "Penetration can be inferred from circumstantial evidence and need not be proved by medical evidence." *Id.* (citations omitted). However, a conviction cannot be

---

2.     O'Brien also cites *State v. Brende*, 2013 S.D. 56, ¶ 27, 835 N.W.2d 131, 142, and argues that any statement R.M. made regarding sexual penetration was recanted because she testified on multiple occasions that she did not remember exactly where she was touched. *Brende* is factually distinguishable from this case because there, this Court found that the alleged victim "completely recanted his prior allegation" and denied ever making any allegation. *Id.* In contrast, R.M. consistently claimed that O'Brien touched her "woman's part." At times, she had difficulty describing the touching that occurred, but never denied that the sexual penetration occurred.

sustained merely upon suspicion or the possibility of guilt. *Id.* at 130 (citing *United States v. Plenty Arrows*, 946 F.2d 62, 65 (8th Cir. 1991)).

[¶22.] "In cases involving child victims, a child's limited understanding of her exact anatomical features does not negate the child's ability to provide circumstantial evidence that penetration occurred." *Id.* (citing *United States v. St. John*, 851 F.2d 1096, 1099 (8th Cir. 1988)). This is because "[c]hildren of that age often lack the vocabulary to specifically describe an act of sexual penetration," thus "'the victim need not go into sordid detail to effectively establish that penetration occurred during the course of a sexual assault.'" *Id.* ¶ 23, 816 N.W.2d at 130 (citation omitted).

[¶23.] In *State v. Toohey*, this Court sustained a rape conviction despite the absence of any direct testimony indicating that any form of penetration occurred. *Id.* ¶ 27, 816 N.W.2d at 131. In concluding that there was sufficient evidence to support the conviction we noted that the victim testified to events that occurred when she was "alone in a farmhouse" with the defendant and was forced to pull her shorts and underwear down, and that while she was "undressed from the waist down, [the defendant] 'touched' her 'front' (pudendal area) and 'it hurt.'" *Id.* ¶ 23, 816 N.W.2d at 130.

[¶24.] Similarly, even though R.M. did not explicitly use the term penetration during her testimony, she testified to details from which a jury could reasonably infer sexual penetration occurred. She testified that the exact same touching occurred many times while she was either alone in the house with O'Brien or when L.M. was sleeping in another room. She further testified that O'Brien would either

"slide his hand" under her clothing or remove her clothing before touching the place "where [she] pees." R.M. described O'Brien using his fingers and hand to touch her "woman's part" and testified that it felt "uncomfortable". Based upon R.M.'s description of how O'Brien repeatedly touched her woman's parts on multiple occasions, a jury could certainly infer such touching could not have occurred without at least some slight penetration of her vulva or labia.

[¶25.] In addition to her testimony, R.M. drew a picture of a human body with an arrow pointing directly to the area where she was touched by O'Brien. She also drew an image of her "woman's part" that appears to depict the labia majora and minora. When asked to put a star where O'Brien touched her, R.M. placed the star inside the center of the drawing. The drawings powerfully demonstrated R.M.'s testimony about where and how she was touched by O'Brien and further supported an inference that penetration, however slight, had occurred.

[¶26.] The jury has "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655, 132 S. Ct. 2060, 2064, 182 L. Ed. 2d 978 (2012) (citation omitted). We have made clear that when reviewing a jury's decision for sufficiency of the evidence, "we must view all the evidence in a light most favorable to the verdict and determine whether that verdict 'was so insupportable as to fall below the threshold of bare rationality.'" *Toohey*, 2012 S.D. 51, ¶ 26, 816 N.W.2d at 131 (citation omitted). Given that penetration may be shown by "any intrusion, however slight" of another

person's body, there was sufficient evidence so that a reasonable juror could find proof of penetration beyond a reasonable doubt. *Id.*

### 2. *Failure to give a unanimity instruction*

[¶27.] O'Brien asserts that the charges in the indictment were duplicitous as the State alleged multiple instances of sexual contact and failed to identify a specific instance in each count of the indictment. Because R.M.'s testimony discussed several unrelated events of inappropriate sexual contact, O'Brien contends the court should have instructed the jury that they must unanimously agree which event satisfied the elements of rape. Failure to provide such an instruction, according to O'Brien, created "a risk that the jurors could have divided between concluding that the penetration necessary to convict O'Brien on counts one and two occurred . . ." during different times at different homes, and that this risk violated his constitutional right to a unanimous jury verdict. O'Brien acknowledges trial counsel did not object to the instructions given by the court or propose a unanimity instruction at trial and thus requests this Court to exercise its discretion to review this alleged error for plain error.[3]

[¶28.] "We invoke *our discretion* under the plain error rule cautiously and only in '*exceptional circumstances.*'" *State v. McMillen*, 2019 S.D. 40, ¶ 13, 931 N.W.2d 725, 729 (quoting *State v. Bariteau*, 2016 S.D. 57, ¶ 23, 884 N.W.2d 169, 173). "To establish plain error, an appellant must show '(1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to notice the error if, (4) it seriously affects the fairness, integrity, or public

---

3. O'Brien was not represented by appellate counsel at trial.

reputation of judicial proceedings.'" *Id.* ¶13, 931 N.W.2d at 729–30 (quoting *State v. Bausch*, 2017 S.D. 1, ¶ 27, 889 N.W.2d 404, 412).

[¶29.]      "'Duplicity' is the joining in a single count of two or more distinct and separate offenses[.]" *Brende*, 2013 S.D. 56, ¶ 12, 835 N.W.2d at 137 (quoting *State v. Muhm*, 2009 S.D. 100, ¶ 19, 775 N.W.2d 508, 514). "In other words, a duplicitous indictment or information includes a single count that captures multiple offenses[.]" *Id.* (alteration in original) (citation omitted). "State and federal courts have adopted procedures that balance the need to prosecute cases involving repetitive acts charged in a single count with defendants' rights to due process and the assurance of jury unanimity." *Muhm*, 2009 S.D. 100, ¶ 32, 775 N.W.2d at 518. In doing so, courts have commonly required the prosecutor to elect a specific act to prosecute or have offered the jury a unanimity instruction.[4]  *Id.*

[¶30.]      There is no dispute that the rape charges were duplicitous, and the State concedes that, despite the absence of an objection or proposed unanimity instruction from O'Brien, the circuit court's failure to give such an instruction satisfies the first two prongs of plain error. Still, O'Brien has the burden to show that the error affected a substantial right and seriously affected the fairness or integrity of the proceedings.

---

4.      We have stated that when the "testimony of the victim recounts undifferentiated or generic occurrences of the sexual act, a modified unanimity jury instruction must be given[.]" *State v. Muhm*, 2009 S.D. 100, ¶ 33, 775 N.W.2d 508, 519 (citing *People v. Jones*, 792 P.2d 643, 650 (Cal. 1990)). The modified instruction informs the jury that "in addition to allowing a conviction if the jurors unanimously agree on specific acts," a jury may also convict "if the jury unanimously agrees the defendant committed all the acts described by the victim." *Id.* (citation omitted).

[¶31.]     To satisfy the showing of an error affecting a substantial right, the defendant must show prejudice by demonstrating that the error "'affected the outcome of the [circuit] court proceeding.'" *McMillen*, 2019 S.D. 40, ¶ 29, 931 N.W.2d at 734 (alteration in original) (citation omitted). "'Prejudice' in the context of plain error requires a showing of a 'reasonable probability' that, but for the error, the result of the proceeding would have been different." *State v. Babcock*, 2020 S.D. 71, ¶ 45, 952 N.W.2d 750, 763 (quoting *State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 33, 785 N.W.2d 272, 283); *accord Carter*, 2023 S.D. 67, ¶ 25, 1 N.W.3d at 685. Without the additional showing of prejudice, "the error does not 'affect substantial rights' under the third prong of plain error review and '[an appellate court] ha[s] no authority to correct it.'" *State v. Guziak*, 2021 S.D. 68, ¶ 22, 968 N.W.2d 196, 203) (alterations in original) (quoting *State v. Jones*, 2012 S.D. 7, ¶ 17, 810 N.W.2d 202, 206).

[¶32.]     O'Brien articulates a limited prejudice argument by essentially repeating his sufficiency of the evidence argument that "even if one reads R.M.'s statements as providing evidence of multiple specific instances of inappropriate touching, none of those incidents includes persuasive direct or circumstantial evidence of penetration." O'Brien's "conclusory argument[s] [are] insufficient to meet [his] burden under plain error review." *Id.* ¶ 25, 968 N.W.2d at 204.

[¶33.]     While the incidental facts surrounding each encounter varied, R.M. testified that the *order and manner* of every touching by O'Brien "was exactly the same[.]" Given the identical and undifferentiated nature of the acts that R.M. described, the risk that the jury would reach inconsistent findings was eliminated

because if the jury believed R.M. and concluded that any encounter satisfied the elements of rape, it necessarily led to the conclusion that every encounter satisfied the elements of rape. Moreover, the jury found O'Brien guilty of every charge in the indictment. *See Muhm*, 2009 S.D. 100, ¶ 34, 775 N.W.2d at 520 (finding harmless error "when the trial court fails 'either to select specific offenses or give a unanimity instruction' if 'the record indicate[s] the jury resolved the basic credibility dispute against defendant and would have convicted the defendant of any of the various offenses shown by the evidence to have been committed.'"). Therefore, O'Brien has failed to satisfy the third prong of plain error.

[¶34.]　　　We affirm.

[¶35.]　　　KERN, SALTER, DEVANEY, and MYREN, Justices, concur.