UNITED STATES of America, Appellee,

v.

Linda Carol ST. JOHN, Appellant.

No. 87–5347.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1988.

Decided July 14, 1988.

Al Arendt, Pierre, S.D., for appellant.

Bonnie P. Ulrich, Asst. U.S. Atty., Sioux Falls, S.D., for appellee.

Before HEANEY, BOWMAN and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

## I. INTRODUCTION

This appeal involves a case of sexual assault on a young boy. The boy's mother, Linda Carol St. John (St. John), was convicted of three counts of incest by sexual

---

intercourse, in violation of 18 U.S.C. § 1153 and SDCL §§ 22–22–1(6), 25–1–6, but was acquitted on two other counts. She challenges her conviction on several grounds, none of which we find persuasive. We affirm.

## II. BACKGROUND

The sexual assaults at issue in this case came to light after the ten-year-old victim, G.S., who had been removed from his home at the Crow Creek, South Dakota, Indian Reservation and placed in a foster home, was caught "acting out sexually" with the four-year-old daughter of his foster parents. After visiting with social worker Ellen Kalinay (Kalinay) on a number of occasions, G.S. revealed that he had been sexually assaulted by various members of the Crow Creek community, including his mother. G.S. was also interviewed by Dr. Mary Curran (Curran), a clinical psychologist with expertise in working with sexually abused children. Through the use of anatomically correct dolls and play therapy, G.S. demonstrated how he had been sexually abused. He indicated that there were incidents of sexual penetration with his mother. During the course of treatment, Curran also learned that G.S. was developmentally disabled, had a short attention span, and generally functioned at the age level of a six- or seven-year-old.

At trial,[1] G.S. testified that his mother touched him with a "bad touch," but he was unable to verbalize much more. He was able to mark on anatomically explicit drawings where he had been touched, and what part of his mother touched him. Kalinay and Curran also related hearsay statements G.S. had made about the sexual assaults committed by his mother. St. John took the stand and denied all the charges. The jury disbelieved her and convicted her on three counts of the five-count indictment. This appeal followed.

## III. DISCUSSION

In seeking to overturn her conviction, St. John first argues that the district

---

1. The Honorable Donald J. Porter, Chief Judge, United States District Court for the District of South Dakota, presiding.

court erred in refusing to appoint a psychologist to examine G.S. on her behalf and present the results of the examination at trial. The Supreme Court has held that a defendant must have access to the materials needed to construct an effective defense, including expert witnesses. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). This does not mean that defendants are to be given carte blanche to retain any expert, but only those experts necessary to afford defendants "an adequate opportunity to present their claims fairly within the adversary system." *Ake*, 470 U.S. at 77, 105 S.Ct. at 1093. In this Circuit, we strike this balance by requiring that a defendant show a reasonable probability that an expert would have aided in her defense, and that the denial of an expert witness resulted in an unfair trial. *Little v. Armontrout*, 835 F.2d 1240, 1244 (8th Cir.1987) (en banc). Our review of the record indicates that St. John's argument falls short of this standard. First, we note that the decision whether or not to appoint an expert is entrusted to the sound discretion of the district court, and we may reverse only if that discretion is abused. *United States v. St. Pierre*, 812 F.2d 417, 420 (8th Cir.1987). The district court was of the view that an adverse psychological examination by a defense expert would not appreciably assist St. John in the preparation of her defense, and might substantially harm G.S. As an appellate court, we are not in a position to gainsay this perception. Second, the record indicates that St. John withdrew her request for an expert on the condition that the prosecution would not elicit any testimony from its expert, Curran, about whether G.S. exhibited characteristics typical of sexually abused children. While the prosecutor may have brushed up against this prohibition with some of her questions, St. John at no time objected to Curran's testimony, nor did she renew her request for an expert witness.

More to the point, we are convinced that the appointment of an expert would not have aided St. John's defense. The most telling evidence was Curran's recital of G.S.'s description of the assaults against him, and her testimony regarding G.S.'s use of anatomically correct dolls to show how his mother assaulted him. That evidence would have been presented to the jury even if a defense expert had been appointed. Essentially, a defense expert's testimony would only have been a comment by one expert on the testimony of another expert. We have in the past recognized that a jury is capable of evaluating an expert's testimony without additional comment offered by other experts. *See United States v. DeNoyer*, 811 F.2d 436, 440 (8th Cir.1987). That holding applies with full force here because Curran made a full and detailed disclosure of her procedures and was subject to lengthy cross-examination. In these circumstances, we cannot say that St. John's defense was so prejudiced by the district court's denial of her motion for an expert that it rendered the trial fundamentally unfair. *See Sullivan v. State of Minnesota*, 818 F.2d 664, 667 (8th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 178, 98 L.Ed.2d 131 (1987).

■ St. John next attacks the district court's decision to allow Curran and Kalinay to testify under Fed.R.Evid. 803(24) about hearsay statements made by G.S. St. John's argument comes up against a formidable line of Circuit precedent that sanctions the use of hearsay testimony in child sexual abuse cases. *See, e.g., United States v. Shaw*, 824 F.2d 601, 609 (8th Cir.1987) (and cases cited therein), *cert. denied*, — U.S. —, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988). St. John attempts to evade the reach of this authority by arguing that the third requirement for admission of hearsay under Fed.R.Evid. 803(24) is not satisfied in this case. This requirement is that the hearsay "must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts." *Id.* at 609. Reduced to its simplest terms, St. John's argument is that because the government elicited testimony directly from G.S., it is barred from using his hearsay statements as a backup, because his direct testimony is "more probative" than the hearsay statements offered by Curran and Kalinay. While this argument has

 

some superficial appeal, we think that St. John reads more into the "more probative" requirement than is warranted. Such a requirement would prohibit hearsay testimony in all child sexual abuse cases where the victim testifies, a result clearly rejected by *Shaw*. While we agree with St. John that the prosecution should not always be allowed to shore up its case by using hearsay statements, we think it appropriate to allow the use of the victim's hearsay statements where the victim is unwilling or unable to testify fully about the sexual assaults to which he or she was subjected. This is just such a case. Although it is clear from the record that the government attempted to elicit testimony from G.S. concerning the sexual assault, it is equally clear that G.S. was hampered by his age and developmental problems, and that his verbal abilities were overcome by the courtroom setting and the delicate nature of the material to which he was attesting. Under these circumstances, we are unwilling to hold that a child victim's testimony is always more probative than the prior hearsay statements he or she may have made in the more relaxed environs of a doctor's or social worker's office.

 St. John's final salvo is aimed at the sufficiency of the evidence. She claims that a conviction for sexual assault, by the terms of the indictment, requires proof of sexual intercourse. She points out that G.S. specifically denied that intercourse between he and St. John took place. This denial, she maintains, is fatal to the case against her.

Our review of the record convinces us otherwise. While G.S. did at times deny that any sexual intercourse had taken place, he also said that he had "humped" with his mother, had been touched with the "bad touch" by her, and he marked anatomically correct diagrams to demonstrate what had taken place. While we acknowledge that G.S.'s testimony was not free from ambiguity, the evidence was that G.S. considered the acts committed by St. John to be "secret," and his fears about removal from his home and the anger of his mother were strong influences that might well

have impeded a more free and effective communication on his part. G.S.'s confusion and unresponsiveness under these circumstances should not be accorded great weight, particularly because they occurred in the unfamiliar and intimidating arena of the courtroom.

Nor do we find any evidence that Curran or Kalinay fabricated or distorted G.S.'s statements, or were in any way remiss in conducting their interviews with him. We hold that their recounting of his statements, coupled with G.S.'s testimony, provided enough for a jury to reasonably convict St. John of sexual assault. Accordingly, her convictions are in all respects affirmed.