#26455-aff in pt, rev in pt & rem-DG

**2013 S.D. 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

STEVEN ALLEN BRENDE,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBIN J. HOUWMAN
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


MOLLY C. QUINN of
Minnehaha County Public
 Defender's Office
Sioux Falls, South Dakota                    Attorneys for defendant
                                        and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 20, 2013

OPINION FILED **07/17/13**

GILBERTSON, Chief Justice

[¶1.]		Eight-year-old C.I. alleged he had been sexually abused by Steven Brende when he spent the night at Brende's home on one occasion.  Following a jury trial, Brende was convicted of two counts of first-degree rape and two counts of sexual contact with a child under age 16.  Brende was sentenced to serve 50 years for each of his first-degree rape convictions and 15 years for each of his sexual contact convictions, with the sentences to run concurrently.  Brende appeals, arguing his due process right to jury unanimity was violated because the indictment was duplicitous, the evidence was insufficient to support his convictions, and his sentences were unconstitutional.

## FACTS

[¶2.]		During the 1990's, Brende met and became friends with C.I.'s parents.  C.I. was born on February 9, 2003.  C.I.'s parents trusted Brende, and they allowed C.I. to spend the night at Brende's home on various occasions.  C.I. enjoyed spending time with Brende and referred to Brende as "Uncle Steve."  In February or March of 2011, eight-year-old C.I. told a family friend that he had been sexually abused by Brende at Brende's home.  C.I.'s parents contacted law enforcement to report the abuse on March 12, 2011, after being made aware of C.I.'s allegations.

[¶3.]		On March 14, 2011, C.I. was evaluated at Child's Voice[1] regarding the alleged sexual abuse.  C.I. was in second grade at the time.  The evaluation included both a forensic interview and a physical examination.  The forensic interview was

---

1.	Child's Voice is a medical evaluation center where children are evaluated for possible physical and sexual abuse.

videotaped in accordance with routine. During the interview, C.I. described four sexual acts he claimed occurred one night when he slept at Brende's home. According to C.I., Brende performed oral sex on C.I., touched C.I.'s penis, and "humped" C.I. on two separate occasions that night.[2] C.I. claimed Brende told him to keep the events a secret and that if C.I. told anyone, he would never get to see Brende again.

[¶4.] While interviewing C.I., the forensic interviewer attempted to determine when the alleged abuse occurred. C.I. indicated that all of the events occurred on the same night, but was unable to establish what night that was.[3] C.I. told the forensic interviewer that he was six and was in first grade when the abuse took place. However, when discussing the alleged abuse with C.I. during the interview, the forensic interviewer repeatedly referred to the events as occurring while C.I. was in second grade. On at least one occasion, C.I. clarified that the

---

2.    The forensic interviewer asked C.I. what he meant by "humping." C.I. was unable to explain it verbally, so the forensic interviewer introduced anatomically correct dolls to assist C.I. in describing what happened. The forensic interviewer then asked C.I. to show what he meant by "humping." First, C.I. put the penis of the child doll up to the butt of the adult doll. C.I. described Brende backing his butt against C.I.'s penis. C.I. said that his penis went inside Brende's butt and that Brende said it "felt good." According to C.I., this incident occurred in Brende's living room. Next, C.I. put the adult doll's penis up against the butt of the child doll. When the forensic interviewer asked C.I. where Brende's penis was C.I. stated "inside." C.I. denied that the "humping" hurt, but indicated that it did not feel good and that he wanted to go home. C.I. stated that this incident occurred in Brende's bedroom.

3.    According to C.I.'s father, the last time C.I. spent the night at Brende's home was during C.I.'s Thanksgiving break in 2010. C.I.'s father noted that C.I. had gone to spend the night at Brende's home on New Year's Eve in 2010, but on that occasion C.I. called his parents to pick him up early because he wanted to go home.

abuse occurred while he was in first grade despite the forensic interviewer's reference to second grade. Upon completion of the forensic interview, C.I. was physically examined by a physician. The examination did not reveal any signs of physical injury or abuse.

[¶5.] Following C.I.'s evaluation at Child's Voice, law enforcement contacted Brende and Brende agreed to be interviewed. When asked about his relationship with C.I., Brende indicated he considered C.I. to be his nephew and stated they were "close." Brende told law enforcement that the last time C.I. spent the night at his home was on C.I.'s mother's birthday (which Brende initially thought was in November, but later agreed was actually in August). During the interview, Brende repeatedly denied sexually abusing C.I.

[¶6.] On March 25, 2011, the grand jury returned an indictment charging Brende with two counts of first-degree rape, in violation of SDCL 22-22-1(1), and two counts of sexual contact with a child under age 16, in violation of SDCL 22-22-7. The indictment alleged the conduct took place on or about August 1, 2010, through November 30, 2010. During the dates charged in the indictment, C.I. was 7 years old and in second grade, and Brende was 53 years old. Brende was arraigned and pleaded not guilty to the charges.

[¶7.] The case proceeded to jury trial on April 30, 2012. During trial, the videotape from C.I.'s forensic interview was admitted as substantive evidence and was viewed by the jury. In addition, C.I. testified. C.I.'s trial testimony was generally consistent with the allegations C.I. made during the forensic interview. However, there were some inconsistencies.

[¶8.]     At trial, C.I. described three sexual acts he claimed occurred on one occasion when he spent the night at Brende's home. Specifically, C.I. testified that while he and Brende were in the living room, Brende "put his penis up [C.I.'s] butt" and moved "back and forth" for "a short time."[4] Next, C.I. testified that after he had fallen asleep in the bedroom, he awoke to find Brende "moving back and forth" with his penis in C.I.'s butt "crack."[5] Further, C.I. testified that Brende touched C.I.'s penis.[6]

[¶9.]     On cross-examination, Brende's counsel attempted to clarify C.I.'s testimony regarding the incident that took place in Brende's bedroom. C.I. agreed he had testified that Brende's penis went into his butt crack, and clarified that Brende's penis did not go into his anal opening, just his butt crack. Additionally, contrary to the allegation C.I. made during the forensic interview, during cross-examination C.I. testified that Brende never made him put his penis in Brende's butt.

[¶10.]     On May 4, 2012, the jury found Brende guilty of both counts of rape in the first degree and both counts of sexual contact with a child under age 16. On July 9, 2012, Brende received concurrent sentences of 50 years in the South Dakota

---

4.     This testimony differs from the allegation C.I. made during the forensic interview, in which C.I. claimed that while he and Brende were in the living room Brende made C.I. put his penis in Brende's butt.

5.     While it may not be anatomically correct, we use language such as "butt" and "butt crack" throughout this opinion because this is the language C.I. used during the forensic interview and at trial.

6.     Although during the forensic interview C.I. stated that Brende performed oral sex on him, he did not mention this allegation during his direct testimony, nor was he cross-examined regarding this allegation.

State Penitentiary for each of the first-degree rape convictions and 15 years for each of the sexual contact convictions. Brende appeals, arguing his due process right to jury unanimity was violated because the indictment was duplicitous, the evidence was insufficient to support his convictions, and his sentences constitute cruel and unusual punishment.

## ANALYSIS AND DECISION

[¶11.] **1. Whether Brende's due process right to jury unanimity was violated because the indictment was duplicitous.**

[¶12.] "'Duplicity' is the joining in a single count of two or more distinct and separate offenses[.]" *State v. Muhm*, 2009 S.D. 100, ¶ 19, 775 N.W.2d 508, 514. "In other words, a duplicitous indictment or information includes a single count that captures multiple offenses[.]" *Id.* "Whether an indictment is . . . duplicitous is a question of law reviewed de novo." *Id.* ¶ 18, 775 N.W.2d at 514 (citing *United States v. Damrah*, 412 F.3d 618, 622 (6th Cir. 2005)).

[¶13.] "[One] vice of duplicity is that because the jury has multiple offenses to consider under a single count, the jury may convict without reaching a unanimous agreement on the same act, thereby implicating the defendant's right to jury unanimity." *Id.* ¶ 29, 775 N.W.2d at 517 (citing *United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir. 1994)). This becomes even more of a concern in cases involving "single act" offenses, which include rape and sexual contact with a child under age 16. *Id.* ¶ 30 & n.5, 775 N.W.2d at 517 & n.5. In cases involving "single act" offenses, "the due process right to jury unanimity requires that the jury be unanimous as to the single act or acts that are the basis for the verdict." *Id.* ¶ 30, 775 N.W.2d at 518. Thus, "even though due process may not require time

specificity in charging such cases, the jury must have been in agreement as to a single occurrence or the multiple occurrences underlying each count." *Id.*

[¶14.] To alleviate the concerns associated with duplicity, this Court adopted the "either or rule." *Id.* ¶¶ 32-33, 775 N.W.2d at 518-20.

> The [either or] rule does not require dismissal of a duplicitous indictment. Rather, the government must elect a single offense on which it plans to rely, and as long as the evidence at trial is limited to only one of the offenses in the duplicitous count, the defendant's challenge will fail. Alternatively, if there is no election the trial court should instruct the jury it must find unanimously that the defendant was guilty with respect to at least one of the charges in the duplicitous count.

*Id.* ¶ 32, 775 N.W.2d at 518-19. Therefore, "[w]here the prosecution declines to make an election on a duplicitous count and the evidence indicates the jurors might disagree as to the particular act defendant committed, a standard unanimity instruction should be given." *Id.* ¶ 33, 775 N.W.2d at 519.

[¶15.] Following the settling of jury instructions at trial, the State raised concerns about duplicity and jury unanimity. The State acknowledged that it did not designate the specific act associated with each charge in the indictment.[7]

---

7.  Specifically, Counts 1 and 2 of the indictment were identical and alleged:

> That the Defendant, STEVEN ALLEN BRENDE, in Minnehaha County, State of South Dakota, on or about the 1st day of August, 2010, through the 30th day of November, 2010, then and there did commit the crime of Rape in the First Degree by accomplishing an act of sexual penetration with C.D.I., DOB 2-9-03, who was less than thirteen years of age, which conduct on the part of the Defendant was in violation of SDCL 22-22-1(1), contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of South Dakota.

(continued . . .)

Further, the State acknowledged that in this case, "there [were] multiple acts that the jurors could use for any one of the charges to render a guilty verdict." Therefore, the State proposed that it would address the duplicity issue during its closing argument to ensure that the jury was "unanimous in their decision with regard to each of the acts that they've heard about."[8]  In the alternative, the State suggested that the unanimity requirement be addressed in a jury instruction.  In response to the State's proposal, Brende's counsel stated she did not believe a formal jury instruction was necessary, and she agreed to have the duplicity issue addressed in closing arguments.

[¶16.]     During closing arguments, the State expressly identified the four acts it intended the jury to consider during its deliberations.  The four acts the State identified were consistent with the four acts C.I. described during the forensic

---

(. . . continued)
      Counts 3 and 4 were also identical and alleged:

> That the Defendant, STEVEN ALLEN BRENDE, in Minnehaha County,  State of South Dakota, on or about 1st day of August, 2010, through the 30th day of November, 2010, did while being sixteen years of age or older, and more than three years older than the victim, did knowingly engage in sexual contact with another person, C.D.I., DOB 2-9-03, who was not the Defendant's spouse and who was under the age of sixteen years, in violation of SDCL 22-22-7 contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of South Dakota.

8.    The State indicated that "[b]y directing [the jury] to be unanimous in which of the acts they are reviewing in order to reach their verdict, we should have protection of the defendant against having the allegation that he was subject, possibly to some jurors' thinking of one act, other jurors thinking of another act, when they render a verdict."

interview. Specifically, the acts the State identified were: (1) Brende making C.I. place his penis in Brende's butt in the living room; (2) Brende performing oral sex on C.I.; (3) Brende placing his penis in C.I.'s butt crack in the bedroom; and (4) Brende touching C.I.'s penis. After expressly identifying the acts that corresponded with the four charges, the State commented on the unanimity requirement. The State reiterated there were four acts and four charges. The State requested that in considering the acts and charges, the jury "all be talking about the same act when you are deciding if there's enough evidence to prove beyond—that I have shown beyond a reasonable doubt that constitutes that act." Further, the State told the jury: "So be fair. Consider each act. Be sure that you're all talking about the same act. Decide if it constitutes rape. If not, does it constitute sexual contact? If neither, move on to the next act."

[¶17.] On appeal, Brende argues the indictment was duplicitous. Brende asserts that at trial, the State presented evidence of at least five separate acts that could have supported the four charges in the indictment. Brende claims that due to the trial court's failure to either require the State to specifically elect the acts it would rely on at trial or to give a unanimity instruction, his right to jury unanimity was violated because the jurors could have relied on different acts to support his convictions. In making this argument, Brende acknowledges that general jury instructions were given that required the jury to: consider each count separately; consider the evidence that applied to each count (and make a finding beyond a reasonable doubt); and reach a unanimous verdict. However, Brende argues these instructions did not adequately protect his right to jury unanimity because these

instructions did not specifically require the jury to unanimously agree on the particular act or evidence that supported a finding of guilt on each count. Further, although Brende acknowledges that the duplicity issue was addressed in closing arguments, Brende asserts that resolving the issue in this manner was improper in light of the "either or rule" adopted by this Court.

[¶18.]    In making these arguments, Brende admits he did not raise the duplicity issue with the trial court and did not request a jury instruction on unanimity. Accordingly, both the State and Brende agree this issue should be reviewed for plain error. *See State v. Bowker*, 2008 S.D. 61, ¶ 45, 754 N.W.2d 56, 69 ("Where an issue has not been preserved by objection at trial, our review is limited to whether the trial court committed plain error."). With regard to plain error, this Court has stated:

> We invoke our discretion under the plain error rule cautiously and only in exceptional circumstances. To demonstrate plain error, the appellant must establish that there was: (1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

*State v. Olvera*, 2012 S.D. 84, ¶ 9, 824 N.W.2d 112, 115.

[¶19.]    However, despite the trial court's failure to strictly comply with the "either or rule" by either requiring the State to specifically elect the acts it would rely on at trial or by giving a unanimity instruction, Brende cannot establish the trial court committed plain error in this case because the jury was ultimately informed of the unanimity requirement. During its closing argument, the State discussed the unanimity requirement with the jury after expressly identifying the four acts that corresponded with the four charges.

Thus, although this manner of resolving the duplicity issue is not one of the two options specified in the "either or rule," it still allowed for the jury to be informed of the unanimity requirement. Furthermore, Brende's counsel specifically agreed to resolving the duplicity issue in this manner, without a formal jury instruction. Accordingly, Brende cannot establish that the trial court's failure to strictly comply with the "either or rule" affected his substantial rights, or that this error seriously affected the "fairness, integrity, or public reputation of the judicial proceedings." *See Olvera*, 2012 S.D. 84, ¶ 9, 824 N.W.2d at 115. As a result, Brende cannot demonstrate that plain error occurred. Therefore, Brende's claim that his due process right to jury unanimity was violated is without merit.

[¶20.] **2. Whether there was sufficient evidence to support Brende's convictions.**

[¶21.] Challenges to the sufficiency of evidence are reviewed de novo. *State v. Plenty Horse*, 2007 S.D. 114, ¶ 5, 741 N.W.2d 763, 764 (citing *State v. Tofani*, 2006 S.D. 63, ¶ 35, 719 N.W.2d 391, 400). However, an appellate court is not required to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* ¶ 5, 741 N.W.2d at 765 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2789). Consequently, the evidence is insufficient only "when no rational trier of fact could find guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443

U.S. at 318-19, 99 S. Ct. at 2789). Further, in reviewing the sufficiency of the evidence on appeal, this Court "will not usurp the jury's function in resolving conflicts in the evidence, weighing credibility, and sorting out the truth." *State v. Swan*, 2008 S.D. 58, ¶ 9, 753 N.W.2d 418, 420 (quoting *State v. Pugh*, 2002 S.D. 16, ¶ 9, 640 N.W.2d 79, 82).

[¶22.]        Brende challenges the sufficiency of the evidence on two separate grounds. First, Brende argues the State failed to present sufficient evidence of penetration to sustain his two convictions for first-degree rape. Proof of "an act of sexual penetration" is required in order to convict a defendant of rape under SDCL 22-22-1. SDCL 22-22-2 defines "sexual penetration" as "an act, however slight, of sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the body or of any object into the genital or anal openings of another person's body." This Court has previously stated that "[p]enetration can be inferred from circumstantial evidence and need not be proved by medical evidence." *State v. Toohey*, 2012 S.D. 51, ¶22, 816 N.W.2d 120, 129 (citing *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996)). Further, "[i]n cases involving child victims, a child's limited understanding of [his or] her exact anatomical features does not negate the child's ability to provide circumstantial evidence that penetration occurred." *Id.* (citing *United States v. St. John*, 851 F.2d 1096, 1099 (8th Cir. 1988)). However, "a conviction cannot be sustained on mere suspicion or possibility of guilt." *Id.* (citing *United States v. Plenty Arrows*, 946 F.2d 62, 65 (8th Cir. 1991)).

[¶23.]        In light of our resolution of the duplicity issue, the State is limited to using the four acts it expressly identified during its closing argument (Brende

making C.I. place his penis in Brende's butt in the living room, Brende performing oral sex on C.I., Brende placing his penis in C.I.'s butt crack in the bedroom, and Brende touching C.I.'s penis) as the basis for each of the four convictions. Of these four acts, C.I.'s allegation that Brende performed oral sex on him was the only act in which the evidence presented at trial provided proof of sexual penetration that was sufficient to sustain a conviction for first-degree rape. As discussed above, C.I. did not mention the oral sex allegation during his direct testimony, nor was he cross-examined regarding this allegation. However, at trial, the court rejected Brende's counsel's hearsay objection and admitted the video of C.I.'s forensic interview as substantive evidence pursuant to SDCL 19-16-38. *See id.* (providing hearsay exception for "statement[s] made by a child under the age of thirteen . . . describing any act of sexual contact or rape performed with or on the child by another[.]"). Accordingly, the video of the forensic interview was viewed by the jury for its substantive value. During the interview, C.I. stated that Brende performed oral sex on him and that his penis was both inside and outside of Brende's mouth. These statements provided the jury with sufficient evidence of penetration to support one of Brende's convictions for first-degree rape.

[¶24.] Nevertheless, in considering the three remaining acts, there was not sufficient evidence of penetration presented at trial to support Brende's second conviction for first-degree rape. We address the three remaining acts in turn, starting with the act C.I. alleged occurred in Brende's bedroom. During direct examination, C.I. testified that after he had gone to sleep in the bedroom, he awoke

to find Brende moving back and forth with his penis in C.I.'s butt crack.  C.I.

testified:

> **State:**  What did Uncle Steve do, if anything else, there in the bedroom with you?
>
> **C.I.:**  He – he was humping me.
>
> **State:**  Can you tell the jurors what you mean by that, humping you?
>
> **C.I.:**  He was going back and forth with his penis in my butt.
>
> . . . .
>
> **State:**  When you say humping, was he – again, was he moving when he had his penis in your butt?
>
> **C.I.:**  He was moving back and forth.
>
> **State**:  Could you tell what part of your butt his penis went into?
>
> **C.I.:**  The crack.

On cross-examination, Brende's counsel questioned C.I. about his testimony

regarding the incident C.I. alleged took place in Brende's bedroom.  The following

exchange between Brende's counsel and C.I. occurred:

> **Defense:**  Okay.  So you changed into your pajamas and you went into the bedroom to go to sleep?
>
> **C.I.:**  Yes.
>
> **Defense:**  Okay.  And when you woke up you said that Steve was humping you?
>
> **C.I.:**  Yes.
>
> **Defense:**  Okay.  And by humping you, you mean that he put his penis in your butt?
>
> **C.I.:**  Yes.
>
> **Defense:**  And you said that in your butt meant in your butt crack, correct?
>
> **C.I.:**  Yes.
>
> **Defense:**  Okay.  I know this is uncomfortable to talk about but it's important, okay?
>
> **C.I.:**  Okay.
>
> **Defense:**  Do you remember if – let me rephrase that.  You didn't say that his penis went inside your butt, did you, just in the crack?
>
> **C.I.:**  Yes.

> **Defense:** Okay. So it did not go into the hole, just into your butt crack?
> **C.I.:** Yes.
> **Defense:** Did anything go into your hole there?
> **C.I.:** No.
> **Defense:** Okay. And I appreciate that, [C.I.]. Again, I know these are difficult questions and you're hanging in there, okay?
> **C.I.:** Yes.
> **Defense:** Okay. While Uncle Steve was humping you, you wanted it to stop?
> **C.I.:** Yes.
> **Defense:** Okay. So you rolled over and went to sleep?
> **C.I.:** Uh-huh, yes.
> **Defense:** And then it stopped?
> **C.I.:** Yes.

[¶25.] Thus, during these exchanges, C.I. clarified that no penetration occurred with regard to the act he asserted took place in the bedroom. As a result, although this act could still be used as the basis for one of Brende's sexual contact convictions, it could not be used as the basis for Brende's second first-degree rape conviction because C.I. expressly stated that sexual penetration did not occur.

[¶26.] Next, we consider C.I.'s allegation that Brende made C.I. put his penis in Brende's butt while the two were in the living room. C.I. made this allegation during the videotaped forensic interview, which was admitted as substantive evidence and viewed by the jury at trial. Nevertheless, C.I. explicitly recanted this allegation at trial during cross-examination. Brende's counsel asked C.I.: "Did [Brende] ever make you put your dick in his butt?" C.I. responded: "No." Brende's counsel then asked C.I.: "Do you remember telling [the forensic interviewer] that he made you put your dick in his butt?" C.I. responded: "No."

[¶27.]        Under the circumstances of this case, we conclude that no rational trier of fact could have found Brende guilty of first-degree rape beyond a reasonable doubt based upon C.I.'s statements that Brende made him put his penis in Brende's butt, which C.I. alleged during the forensic interview but then recanted at trial.  First, at the time C.I. made these statements during the forensic interview, he was not subject to cross-examination, nor was he under oath.  Next, as opposed to a situation in which a witness qualifies prior statements or partially recants them, in this case C.I. completely recanted his prior allegation that Brende made him put his penis in Brende's butt.  C.I. also denied any recollection of making this allegation.  *See State v. Robar*, 601 A.2d 1376, 1379 (Vt. 1991) (recognizing "the impediment to cross-examination . . . when the witness professes no memory of the subject of the cross-examination").  Additionally, there was no evidence that C.I. recanted this allegation due to intimidation or coercion, nor was any other evidence presented that would have explained C.I.'s recantation.  *See United States v. Bahe*, 40 F. Supp. 2d 1302, 1310 (D.N.M. 1998) ("The central difficulty with basing a conviction on nothing more than an out-of-court statement which has been recanted at trial is that the fact finder has no logical basis for determining which statement is true[.]"); *State v. Pierce*, 906 S.W.2d 729, 736 (Mo. Ct. App. 1995) (recognizing the danger of allowing a conviction to be based solely upon a prior statement recanted at trial, stating "[w]hen the trier of fact decides to believe a witness' prior statement rather than the in-court contradiction, that decision often is based

solely on guess or intuition, not credible facts"). *See also* Stanley A. Goldman, *Guilt by Intuition: The Insufficiency of Prior Inconsistent Statements to Convict*, 65 N.C. L. Rev. 1, 38 (1986) ("[W]ithout a specific factual basis in the record to justify believing the prior accusation over the present testimony, a verdict based solely on the prior statement would be supported only by suspicion, hunch, guess, or intuition . . . [which] does not satisfy due process.").

[¶28.]     Furthermore, as no evidence was presented to corroborate this allegation, C.I.'s prior statements, recanted at trial, provided the only substantive evidence that could have supported a first-degree rape conviction. *See United States v. Orrico*, 599 F.2d 113, 118 (6th Cir. 1979) (recognizing the difference between admissibility and sufficiency, and noting that in response to concerns that adoption of Federal Rule of Evidence 801(d)(1)(A), which would allow for the admission of prior inconsistent statements for substantive value, might result in convictions based solely upon that evidence, the Senate Committee stated: "[Rule 801(d)(1)(A)], however, is not addressed to the question of the sufficiency of the evidence to send a case to the jury, but merely as to its admissibility[,] [f]actual circumstances could well arise where, if this were the sole evidence, dismissal would be appropriate."). Accordingly, even though the statements C.I. made during the forensic interview pertaining to his allegation that Brende made him put his penis in Brende's butt were admitted as substantive evidence pursuant to SDCL 19-16-38, we conclude that the recanted statements, standing alone,

were insufficient to support a conviction against Brende for first-degree rape.[9]

[¶29.]      Finally, C.I.'s remaining allegation that Brende touched his penis cannot be used as the basis for Brende's second first-degree rape conviction because no penetration was alleged with regard to this act. Therefore, although there was sufficient evidence of penetration presented at trial to support one of Brende's convictions for first-degree rape, the evidence presented at trial was insufficient to support Brende's second conviction for first-degree rape even when viewed in the light most favorable to the State. As a result, Brende's second conviction for first-degree rape is reversed.

[¶30.]      As a separate challenge to the sufficiency of the evidence, Brende argues there was insufficient evidence that the crimes occurred during the time period charged in the indictment (August 1, 2010, through November 30, 2010). Thus, Brende asserts the evidence was insufficient to support his convictions for sexual contact and first-degree rape. This Court has previously recognized that "[i]t is not always possible to know when crimes involving sexual abuse of minors occurred." *State v. Brim*, 2010 S.D. 74, ¶ 8, 789 N.W.2d 80, 84 (citing *Muhm*, 2009 S.D. 100, ¶¶ 23, 26, 775 N.W.2d at 515-516). This is because "[c]hildren, especially those who suffer traumatic events, cannot always remember precise times and

---

9.      We leave for another day the question of whether (and if so, when) a prior statement, recanted at trial, may be sufficient to support a conviction. *See United States v. Bahe*, 40 F. Supp. 2d 1302 (D.N.M. 1998); *Commonwealth v. Brown*, 52 A.3d 1139 (Pa. 2012); Stanley A. Goldman, *Guilt by Intuition: The Insufficiency of Prior Inconsistent Statements to Convict*, 65 N.C. L. Rev. 1 (1986).

dates." *Id.* (quoting *Swan*, 2008 S.D. 58, ¶ 21, 753 N.W.2d at 423). Therefore, "[a]lthough an indictment should be as specific as possible, time is not a material element of crimes involving sexual abuse of minors." *Id.* ¶ 9, 789 N.W.2d at 84 (citing *Muhm*, 2009 S.D. 100, ¶ 23, 775 N.W.2d at 515). Instead, this Court is "lenient in child sexual abuse cases where there are differences between the dates alleged in the indictment and those proven at trial" and "the fact that a crime was committed on a date different from the one alleged in the indictment is not fatal to the charge." *Id.* Furthermore, "[u]nless the defendant demonstrates that he was deprived of his defense because of a lack of specificity, this Court's policy of leniency governs." *Id.* (quoting *Swan*, 2008 S.D. 58, ¶ 12, 753 N.W.2d at 421).

[¶31.] During the dates charged in the indictment, C.I. was seven years old and in second grade. Brende argues there was insufficient evidence that the crimes occurred during the time period charged in the indictment because C.I. specifically stated during his interview at Child's Voice that he was six years old and in first grade when the abuse occurred.[10] However, the forensic interviewer who conducted C.I.'s interview at Child's Voice on March 14, 2011, testified that C.I. had difficulty with the concept of time and was unclear about when the abuse occurred.

---

10. C.I. was also interviewed at Child's Voice on May 25, 2010 (C.I. was seven years old and finishing first grade at the time) as a result of behavioral problems he was having at school and at home. During that interview, C.I. denied ever being touched inappropriately in a sexual manner. In addition to claiming that the dates in the indictment do not match C.I.'s claims as to when the abuse occurred, Brende asserts C.I.'s denial of ever being touched inappropriately while in first grade contradicts C.I.'s claim that Brende sexually abused him while he was in first grade, meaning that C.I.'s current allegation must be false.

Furthermore, the State presented evidence at trial to support its allegation that the sexual abuse occurred on or about August 1, 2010, through November 30, 2010.[11]

[¶32.] Regardless, the lack of a specific date of the abuse did not deprive Brende of his defense in this case. Brende's defense was a complete denial that the sexual abuse ever occurred. In support of this defense, Brende attempted to undermine C.I.'s credibility at trial by pointing out the inconsistencies in C.I.'s allegations, C.I.'s emotional and behavioral problems, and C.I.'s inability to precisely identify when the abuse occurred. Because the main issue in this case was C.I.'s credibility, the lack of a precise date of the abuse was not a critical issue in this case. *See Brim*, 2010 S.D. 74, ¶¶ 5-11, 789 N.W.2d at 83-85 (concluding the trial court did not err in denying defendant's motion for judgment of acquittal when lack of precise dates of the abuse did not deprive the defendant of his defense, which was a complete denial of any sexual acts occurring during the entire time period covered by the indictment). As a result, this Court's policy of leniency governs.

---

11. During the end of C.I.'s forensic interview, the forensic interviewer and C.I. were discussing the fact that C.I. spent the night at Brende's house on the night the sexual abuse occurred. The forensic interviewer then asked C.I. if there was ever a time when he did not spend the night at Brende's home. Although it is unclear, C.I. appears to respond "the *next* time I go there, I think." The State established that C.I. was supposed to spend the night at Brende's on New Year's Eve in 2010, but that he called to have his parents pick him up early that night. Thus, if C.I. did in fact say "next" in response to the forensic interviewer's question, the sexual abuse would have occurred on the most recent occasion C.I. spent the night at Brende's home, which C.I.'s father testified was in November 2010 (and Brende indicated was in August 2010). Additionally, there was evidence presented at trial indicating that Brende moved into the apartment where C.I. alleged the abuse occurred sometime during September or October 2010, when C.I. was in second grade. Thus, despite C.I.'s statement that the abuse occurred when he was in first grade, the abuse could not have occurred while C.I. was in first grade because Brende did not live in that apartment.

Therefore, we reject Brende's challenge to the sufficiency of the evidence on this basis.

[¶33.] **3. Whether the sentences imposed by the trial court violate Brende's Eighth Amendment right against cruel and unusual punishment.**

[¶34.] "The Eighth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *State v. Williams*, 2006 S.D. 11, ¶ 12, 710 N.W.2d 427, 431; *see also* U.S. Const. amend. VIII. When a defendant asserts that his or her sentence constitutes cruel and unusual punishment, we review the sentence for proportionality:

> [W]e first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court. If the sentence does not appear grossly disproportionate, no further review is necessary. If the sentence does appear grossly disproportionate, an intra- and inter-jurisdictional analysis shall be conducted. We also consider the gravity of the offense and the harshness of the penalty; and other relevant factors, such as the effect this type of offense has on society.

*Williams*, 2006 S.D. 11, ¶ 12, 710 N.W.2d at 432 (quoting *State v. Guthmiller*, 2003 S.D. 83, ¶ 43, 667 N.W.2d 295, 309) (internal citations and quotation marks omitted). *See generally Williams*, 2006 S.D. 11, ¶ 12 n.2, 710 N.W.2d at 432 n.2 (clarifying the standard of review for Eighth Amendment challenges).

[¶35.] On appeal, Brende asserts that his sentences are grossly disproportionate to his offenses because the circumstances of his offenses do not justify such harsh sentences. Therefore, Brende argues his sentences violate his Eighth Amendment right against cruel and unusual punishment. In addressing

Brende's claim, we first consider the gravity of Brende's offenses. Brende was convicted of one count of first-degree rape and two counts of sexual contact with a child under age sixteen (we do not consider Brende's second first-degree rape conviction due to our reversal of that conviction on appeal). At the time of the abuse, C.I. was only 7 years old, whereas Brende was 53 years old. Additionally, in committing the offenses, Brende took advantage of the relationship he had established with both C.I. and C.I.'s parents. Furthermore, after committing the offenses, Brende threatened C.I. in order to prevent C.I. from reporting the abuse.

[¶36.]    In support of his claim that his sentences are not justified by the circumstances of his offenses, Brende notes there was no evidence that the sexual acts caused C.I. physical trauma or pain. In addition, Brende points out that the abuse occurred on a single occasion, and was not alleged to be ongoing. Further, Brende emphasizes that he has a limited criminal history, which includes no felonies or crimes against children, and asserts that he is less culpable for his offenses because he suffers from intellectual impairments.[12]

[¶37.]    However, despite Brende's contentions, additional considerations weigh in favor of the sentences imposed by the trial court. For example, in emphasizing there was no evidence that the sexual acts caused C.I. physical trauma or pain, Brende fails to recognize the emotional trauma C.I. suffered and will likely

---

12.    Brende had an IQ of 84, which is within the borderline intellectual functioning range, although his capabilities in verbal comprehension and attention were much lower than his overall score suggested. Brende dropped out of school at age 17, at which time he was only at an eighth or ninth grade level.

continue to suffer as a result of the sexual abuse and Brende's subsequent threats. *See State v. Bonner*, 1998 S.D. 30, ¶ 27, 577 N.W.2d 575, 583 (recognizing that "child victims of sex offenses often develop life-long emotional problems"). In addition, Brende's pre-sentence investigation report and psycho-sexual evaluation revealed that Brende had a high risk for being untruthful, he engaged in strong levels of denial and minimalization, and he was not likely to be a willing participant in mental health counseling or sex-offender treatment. Brende's psycho-sexual evaluation also indicated that Brende was sexually interested in both grade-school boys and girls, despite his denial of having any kind of sexual interests. Furthermore, Brende never accepted responsibility for his actions.

[¶38.]      Next, in considering the harshness of Brende's sentences, Brende's concurrent sentences of 50 years for his first-degree rape conviction and 15 years for each of his sexual contact convictions were within the statutory maximums.[13] Nevertheless, citing to *State v. Bruce*, Brende asserts he should have received lesser sentences because the circumstances of this case do not involve "the most serious combination[ ] of the offense and the background of the offender." 2011 S.D. 14, ¶ 32, 796 N.W.2d 397, 407 (stating that "[w]hen . . . statutory ranges are established, the legislative intent is that 'the more serious commissions of the crime . . . deserve sentences at the harsher end of the spectrum'" and that "the most severe sanctions

---

13.   The maximum sentence for first-degree rape under SDCL 22-22-1(1) is life imprisonment. The mandatory minimum sentence for a first-offense violation of SDCL 22-22-1(1) is 15 years. The maximum sentence for sexual contact with a child under age 16, in violation of SDCL 22-22-7, is 15 years. The mandatory minimum sentence for a first-offense violation of SDCL 22-22-7 if the victim is less than thirteen years of age is 10 years.

[are intended to be reserved] for the most serious combinations of the offense and the background of the offender"). However, the fact that the trial court sentenced Brende to a total of 50 years (as all sentences were to run concurrently), which was well within the maximum of life imprisonment, indicates that the trial court recognized this case did not involve the most serious combination of offenses and offender and that the trial court sentenced Brende accordingly. Ultimately, we conclude that Brende's sentences are not grossly disproportionate to his offenses. As a result, no further review is necessary.

## CONCLUSION

[¶39.] First, we reject Brende's duplicity challenge because Brende cannot establish that the trial court's failure to strictly comply with the "either or rule" constitutes plain error. Therefore, we affirm on this issue. Next, although there was sufficient evidence to support both of Brende's sexual contact convictions, the evidence of sexual penetration presented at trial was only sufficient to support one of Brende's first-degree rape convictions, that being the first-degree rape conviction based on C.I.'s oral sex allegation. As a result, we reverse Brende's second conviction for first-degree rape and remand to the trial court with instructions to strike the 50-year sentence given for this conviction and to enter a judgment of acquittal on this charge. Finally, Brende's claim that his sentences violate his Eighth Amendment right against cruel and unusual punishment is without merit because Brende's sentences are not grossly disproportionate to his offenses. Accordingly, we affirm on this issue.

[¶40.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.